```
 1                   IN THE UNITED STATES DISTRICT COURT
                         EASTERN DISTRICT OF ARKANSAS
 2                            CENTRAL DIVISION

 3
     RYAN EAGLES AND MICHELLE
 4   EAGLES, as Parents and Next
     Friend of K.E., a minor,
 5
                       Plaintiffs,
 6
          v.                                 No. 5:19CV00097-JM
 7
                                             October 10, 2019
 8   HABILITATION CENTER, LLC, a             Little Rock, Arkansas
     Foreign Limited Liability               3:30 p.m.
 9   Company, d/b/a MillCreek of
     Arkansas a/k/a MillCreek
10   Behavioral Health and ACADIA
     HEALTHCARE COMPANY, INC., a
11   Foreign Corporation,

12                     Defendants.

13              TRANSCRIPT OF TELEPHONE CONFERENCE
              BEFORE THE HONORABLE JAMES M. MOODY JR.,
14                  UNITED STATES DISTRICT JUDGE

15
     APPEARANCES:
16
     On Behalf of the Plaintiff:
17
         MR. MICHAEL JERED MEDLOCK
18          Medlock & Gramlich LLP
            105 North 14th Street
19          Fort Smith, Arkansas  72901

20   On Behalf of the Defendant:

21       MR. ROBERT M. HONEA
            Hardin, Jesson & Terry, PLC
22          Post Office Box 10127
            Fort Smith, Arkansas  72903-0127
23


24
         Proceedings reported by machine stenography; transcript
25   prepared utilizing computer-aided transcription.
```

Margaret M. Kruse, RMR, CRR, CSR
United States Court Reporter

```
1                    P R O C E E D I N G S
2                        - - - oOo - - -
3         (Proceedings commenced at 3:30 p.m. via telephonic
4    connection and was reported as follows:)
5              THE COURT:  Hello.
6              MR. MEDLOCK:  This is Jered.
7              THE COURT:  Hi, Jered.  It's me and you right now.
8    We're waiting on everybody else.  This is Jay Moody.
9              MR. MEDLOCK:  Good afternoon, Your Honor.
10             THE COURT:  Thank you; you, too.
11             MR. HONEA:  Hey, guys.
12             THE COURT:  Bob?
13             MR. HONEA:  How are you all?
14             THE COURT:  Bob, anybody going to be with you?
15             MR. HONEA:  No, just me.
16             THE COURT:  Okay.  We've got Jered on the phone.
17   Anybody joining you, Jered?
18             MR. MEDLOCK:  No, sir.
19             THE COURT:  For the benefit of my court reporter,
20   whenever you speak, can you let me know who's talking?
21             MR. HONEA:  Yes, sir.
22             MR. MEDLOCK:  This is Jered, and yes.
23             THE COURT:  We are on the record in Eagles v.
24   Habilitation Center LLC, case No. 5:19CV97 on the defendants'
25   motion to quash the 30(b)(6) Notice of Deposition and a
```

1  protective order.

2  Jered, thank you for the heads-up about, hey, are we ever
3  going to get an answer on this. I had, in my mind, confused
4  this with another discovery dispute that we had resolved. So I
5  guess, moral of the story, when in doubt, ask. I'm sorry I let
6  this sit because I actually thought it had been tended to.
7  That's no excuse, but by explanation that's why I'm just now
8  getting around to it.

9  I'm looking at document 16, which is the brief in support.
10  Before I get there, have you all been able to work anything out?

11  MR. HONEA: Judge, we filed a motion to quash the
12  30(b)(6) Notice of Deposition. Jered filed a response to that.
13  In his response, he also included a motion to compel related to
14  separate requests for production. So we've actually got both
15  our motion to quash the 30(b)(6) notice and then Jered's motion
16  to compel with respect to the request for production.

17  I might add as a footnote, the 30(b)(6) included some
18  requests for production, so Jered combined both the 30(b)(6)
19  request for production and the unrelated -- well, separate
20  request for production in his motion to compel.

21  On the request for production, we've got that narrowed down
22  to the only things we're fighting over are the medical records
23  of the alleged perpetrator, incident report for Acadia, the
24  holding company that owns this facility, and --

25  THE COURT: Are you talking about incident report for

1  this incident or just in general?
2           MR. HONEA:  Just in general.
3           THE COURT:  Okay.
4           MR. HONEA:  And we have agreed to get him incident
5  reports for the facility, where involved, in this case.  The
6  only objection is to incident reports for all Acadia-owned
7  facilities.  And then the third -- help me, Jered, I've
8  forgotten what the third thing is.
9           MR. MEDLOCK:  The third thing that was not agreed to
10 are witness statements contained in the investigation file.
11          MR. HONEA:  Correct.
12      And then we also have pending our motion to quash the
13 30(b)(6) notice itself.
14          THE COURT:  I'm going to take the low-hanging fruit, I
15 guess.  On the incident reports, I'm going to not require that
16 all Acadia reports from the other facilities be produced because
17 I think that's too broad.
18          MR. MEDLOCK:  Your Honor, it's a little misnomer to
19 say all reports.  This may not change your opinion, but what I
20 asked for were for physical assaults on minors at the other
21 facilities.  That may not change your opinion, but I didn't ask
22 for each and every report, if that makes any difference to you.
23          THE COURT:  Well, I'm trying to learn as I go whether
24 or not physical assaults are meaning patient-on-patient physical
25 assaults?  Or what are we talking about?

1   MR. MEDLOCK:  Yes, Your Honor, what I've asked for and
2  what I think is commonly understood between the defense counsel
3  and I is physical assaults would mean patient-on-patient and
4  minor would mean both parties are under 18.
5   Your Honor, the reason that I asked for those in recent
6  discovery is that I got information that Acadia is actually the
7  entity that tests or does the educational programs for MillCreek
8  and, I believe, is going to be the same entity that does all of
9  the testing and educational programming for all of their other
10 facilities.  It's actually Acadia tests and an Acadia program,
11 not a MillCreek-specific program based upon recent discovery.
12   So our allegation regarding Acadia is that they don't have
13 a safe environment and/or they're understaffed and/or they're
14 not providing adequate security.  In that they are the entity
15 that is responsible for training and testing the employees of
16 their various facilities, we believe it to be relevant and
17 important to the causes of action we've alleged as against
18 Acadia.
19   THE COURT:  Jered, where are these other facilities?
20   MR. MEDLOCK:  Well, Your Honor, to be quite honest,
21 I'm not able to tell you which ones only have minors, but they
22 have facilities all across the United States.  Their website
23 advertises I think that they have 587 different facilities.  So
24 it's a huge company, I certainly concede that.  I don't know how
25 many of those only have minors or have minors, you know, where

1   the minor-on-minor assault could occur.  I don't know if they
2   just have adult facilities.  I just don't know the answer to
3   those questions, but they are all across the United States.
4           THE COURT:  Bob, where is the closest facility that
5   would have reports responsive to this request?  I mean, I guess
6   what I'm saying is, are there other facilities in the town, or
7   are we talking about other facilities in the county or are we
8   talking the closest facility is two to three states away?
9           MR. HONEA:  This facility that's involved in this case
10  is located in Fordyce.  I don't know, off the top of my head,
11  where the nearest geographically located facility would be to
12  Fordyce.  I don't know if they own a facility in Fort Smith.  I
13  don't know if they have one in Little Rock.
14          THE COURT:  Do you know if any of the employees from
15  one facility are commonly moved between facilities?
16          MR. HONEA:  Never.  The facilities are standalone,
17  operated alone.  There is no overlap of any kind between
18  facilities.
19          THE COURT:  Jered, I'm going to keep my ruling on that
20  last one as it is, but I appreciate the clarification that you
21  were asking for.
22      What was the other thing that you all hadn't worked out in
23  the motion for production?  The medical records --
24          MR. MEDLOCK:  Of the alleged offender.  Your Honor, I
25  asked for the medical records of the alleged offender.  Those

1 were met with objection based upon patient privilege -- the
2 patient-physician privilege.  My response in my motion was that
3 neither the patient nor the physician was a party to the case
4 and so that's an improper privilege.
5 　　　Bob attached a statement, a typed statement with the
6 signature of someone purporting to be Gary Tharp, who I think is
7 one of the physicians at the MillCreek facility.  That is an
8 unnotarized statement, an unverified statement, but our position
9 remains the same.  No one in this case has the ability to state
10 the privilege.
11 　　　Secondly, I also have conceded that they can redact the
12 offender's name and any identifiers.  I just want to review her
13 conduct at the facility to see if my expert could opine that she
14 should have been segregated away from other minors.
15 　　　　　MR. HONEA:  You know, the privilege, once it's
16 asserted, it's asserted.  And the treating doctor who was the
17 admitting physician at this hospital, he signed a piece of paper
18 saying I'm invoking the privilege on behalf of the patient.  I
19 don't know how you get around that.  And then the idea that,
20 well, we can just cross her name out, that doesn't change the
21 fact that the privilege still applies.  Just redacting her name
22 doesn't make the documents any less her medical records.  I
23 mean, the way I look at it is if that's the case, then there
24 wouldn't be anything with my doctor scratching my name off my
25 medical records and posting them on the Internet.

1  THE COURT: Well, Bob, I think the issue is whether or
2  not this young lady's -- if I can just mention that, I don't
3  know how else to refer to her -- medical records were such to
4  put your client on notice that they should have been doing
5  something differently. And it's not a question of who it is,
6  it's that -- and I guess the best way for me to handle that is
7  to ask that you -- that's a nice way of saying "order" -- that
8  you produce the medical records for me to review *in camera*.
9  Obviously, there will be portions of the medical records that
10 will have nothing to do with that. Then I'll deal with that
11 issue best I can. Because I think if there were indications
12 that should have put you on notice that this could have
13 happened, that's different than just issuing her medical
14 records. I don't think Jered cares whether it was the patient
15 down the hall or what the patient was or their name was. It's
16 the question of notice as opposed to anything else. So I'm
17 going to ask that you issue them under seal to me.
18     All of this that might be presented to me will be under
19 seal. I'm going to look at it and then we'll reconvene once I'm
20 able to get to it. The reason I'm ordering that is because that
21 gives you HIPAA protection and everything else, as opposed to
22 asking. So you don't have to run afoul of anything else when
23 producing the medical records to me.
24     MR. MEDLOCK: I will comply with your ruling, Judge.
25     THE COURT: Thank you for that. And then the written

1  statements and the investigation file, when were the statements
2  given and at whose request?
3          MR. HONEA:  The protocol, the procedure when an
4  incident is reported -- an incident, obviously an incident
5  report is submitted -- that goes to the risk manager and the
6  risk manager is then responsible for conducting an investigation
7  which he then presents to the quality improvement committee.
8          THE COURT:  Who does the risk manager work for?
9          MR. HONEA:  He's an employee of MillCreek, of the
10 facility.
11         THE COURT:  Not an insurance adjuster or malpractice
12 adjuster or somebody in your office?
13         MR. HONEA:  No.  The risk manager has nothing to do
14 with insurance.  His job is to work for the facility.  Among his
15 other chores is conducting investigations of incidents that are
16 reported.  One of the things he gathers, of course, is witness
17 statements.
18         THE COURT:  Okay.  Have the names of these witnesses
19 been provided to Jered?
20         MR. HONEA:  Judge, off the top of my head, I can't --
21 we provided him with names -- well, yes, they would have been.
22 With the exception of patients, he would have gotten the list of
23 all employees who worked on the hall.  So he would, by
24 definition, have the names of witnesses who provided statements.
25         THE COURT:  Jered, have you made any attempt to

1  contact these people to see if they'll contact you or give you a
2  statement?
3         MR. MEDLOCK:  Well, Judge, as of this morning, we've
4  set up depositions for all of those people.  So the only people
5  that have been disclosed to me as witnesses are people who may
6  know anything about the incident are employees or former
7  employees.  I don't know the names of any non-Acadia or
8  non-MillCreek employees.
9       Judge, I have experience with this company in the past --
10 Bob was on the same case -- and there were several witness
11 statements that were taken from other minors or other patients
12 in our other case.  The statements that were given by employees,
13 I can talk about what they knew in their depositions because
14 their names have been disclosed.  I will never have the ability,
15 absent the turnover of these statements, to even know of these
16 other kids.  I'm in a similar scenario as to the records.  This
17 particular person may have offended on someone else or there may
18 have been another scenario where, again, a notice issue was
19 observed in these statements.  It may be that my own client gave
20 a statement and I just don't know because I'm not able to get --
21 I have been met with resistance to get any of the witness
22 statements, whether they be employees or passersby or other
23 patients.
24        THE COURT:  Bob, I guess I'm going to ask you the
25 question maybe a little differently.  Have you provided him with

1    the name of everybody that you have a statement for?
2         MR. HONEA:  Well, other than the minor patients, yes.
3         THE COURT:  Okay.  And why have their names not been
4    provided?
5         MR. HONEA:  For the same reason, they're minor
6    patients, I can't -- privilege, confidentiality, patient
7    privacy.
8         THE COURT:  Well, then I'm going to ask that you
9    provide the statements to me also.  I don't see how you could
10   use them defensively in the defense of your case but not provide
11   them to opposing counsel to just look and see what they say.
12   And if you're not going to use them, just not produce them.  I
13   can't believe that somebody that you would have interviewed
14   about an incident and because they're in this facility that
15   they're protected from anybody else talking to them but you or
16   your investigator or otherwise.
17        MR. HONEA:  Well, again, I guess this gets back to the
18   quality assurance privilege.  You'd asked about names, but it
19   also goes to the quality assurance privilege.  Anything that's
20   generated, you know, by statute, is generated for presentation
21   to the quality assurance committee, it's immune from discovery.
22        THE COURT:  Well, the statements may be, but the
23   identity of these people who have knowledge as to what went on
24   doesn't.  I mean, you can't protect the identity of somebody
25   that might know what's going on.  I don't think it exceeds that

1  far.  You can't just go I'm not going to tell you who saw it or
2  who knew about it or anything about it.  It may be that your
3  research or your reports are protected, but I don't think you
4  can shield anyone with knowledge from the plaintiffs talking to.
5  I don't think it extends to that.
6         MR. HONEA:  And I agree with that, Judge.  The
7  objection was to producing the witness statements themselves.
8         THE COURT:  Right.  I was on the names and you said
9  you hadn't produced their names because of patient protection
10 and somehow we drifted over into the statements themselves.  At
11 this point, I'm trying to figure out whether or not Jered has
12 these witnesses' names so he can attempt to elicit that
13 information on his own as opposed to having your reports or
14 statements that you collected.  That's my first line of
15 solution.
16        MR. HONEA:  I follow you, Judge.  Yes, and Jered has
17 all the names and depositions are scheduled.  The only exception
18 is one minor patient.
19        THE COURT:  Okay.  Well, I'm going to ask you that you
20 produce any names of anybody that you know has knowledge of the
21 incident, whether a patient or otherwise.
22        MR. HONEA:  How can I produce a patient's name?  I
23 mean, that is privileged.  It's confidential.  It's private.
24 HIPAA prohibits it.  How can I give that to -- I understand your
25 point about, you know, I can't protect -- how do I say this?

1  Jered's entitled to know who witnesses are that might have
2  knowledge, but how can I -- I'm violating my obligation to the
3  patient when I tell him, oh, yeah, this 12-year-old girl's a
4  patient at our facility.
5         THE COURT:  I'm not ordering you to do anything except
6  notify Jered of anyone that you think has knowledge of these
7  facts, whether they're a patient or not.  Your protection is my
8  order for you to do that.  I understand that you're trying to
9  say he doesn't get to know who she is because she's a patient.
10 You don't have to identify her as a patient.  I'm just saying
11 anybody that you talked to who has knowledge of the facts, Jered
12 needs to be notified of their name and how to get ahold of them.
13 They don't have to talk to him.  Then we'll go to the next step.
14 If, in fact, he can't obtain this information any other way,
15 I'll deal with that.
16       But the fact that she's a patient doesn't shield her from
17 having knowledge about this incident.  I mean, I just don't see
18 that the privilege goes that far.  Anybody that witnessed
19 something in a hospital that happened to be walking through it
20 would have that protection.  You're not disclosing anything
21 about her medical records or anything else other than the fact
22 that she's there, and that's just the way I'm going to have to
23 see it.  I know you don't agree with it and you don't have to,
24 but I just ask that you produce that name.
25         MR. HONEA:  I understand.

1   THE COURT: Is that all we had on the requests for
2   production?
3   MR. MEDLOCK: I think that's it, Your Honor.
4   Bob, correct me if I'm wrong, but I believe those are the
5   only things that are left remaining.  I have withdrawn
6   voluntarily several of the topics under the 30(b)(6) notice, and
7   I really anticipate that once I receive this new information
8   that the 30(b)(6) notices or Bob's objections to those will take
9   care of themselves.  There was some issues that Bob had with
10  some wording and I conceded that that wording is improper.  One
11  of the things I said was other information known to the
12  deponent, so I conceded that that shouldn't be in there.
13  THE COURT: There were a few things that were in there
14  that I agree with Mr. Honea on.  If you all work it out, I won't
15  go into it.
16  MR. MEDLOCK: I want to make sure Bob is in the same
17  frame of mind about that as I am.  He may still have issues with
18  it.
19  MR. HONEA: Jered and I have worked together before
20  and we've always been able to work things out.  So I'm fine with
21  leaving it where it is.  If we get further along and have
22  problems, we'll bring it back to your attention and ask you to
23  tell us what we need to do.
24  THE COURT: Off the record for a moment.
25  (Off the record.)

1       THE COURT:  Let us know what else we can do.  If
2  that's all we had, that was easier than I feared.
3       MR. MEDLOCK:  Judge, thank you.
4       MR. HONEA:  Thank you, Your Honor.
5       THE COURT:  All right.  Bye.
6    (Proceedings concluded at 3:53 p.m.)
7                        CERTIFICATE
8    I, Margaret M. Kruse, Official Court Reporter, do hereby
9  certify that the foregoing is a true and correct transcript of
10 proceedings in the above-entitled case.
11
12 /s/ Margaret M. Kruse, CSR, RMR, CRR          Date:  January 2, 2020
13 United States Court Reporter